

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**



**FILED**

AUG 1 2012

Phil Lombardi, Clerk
**U.S. DISTRICT COURT**

| | |
|---|---|
| (1) ANDERSON ENERGY GROUP (OHIO), LLC, an Oklahoma limited liability company, | ) ) ) ) |
| Plaintiff. | ) ) |
| v. | ) ) |
| (1) ENDEAVOR OHIO, LLC, a Texas limited liability company; and (2) ENDEAVOR ENERGY RESOURCES, LP, a Texas limited partnership, | ) ) ) ) ) |
| Defendants. | ) |

**12 CV - 4 3 0 CVE   TLW**

Case No. _____

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff, Anderson Energy Group (Ohio), LLC, for its complaint against the Defendants, Endeavor Ohio, LLC and Endeavor Energy Resources, LP, alleges and states as follows:

### PARTIES

1.      Plaintiff, Anderson Energy Group (Ohio), LLC ("Anderson"), is an Oklahoma limited liability company with its principal place of business in Tulsa, Oklahoma.

2.      Defendant, Endeavor Ohio, LLC ("Endeavor"), is a Texas limited liability company with its principal place of business in Dallas, Texas.

3.      Defendant, Endeavor Energy Resources, LP ("EER"), is a Texas limited partnership with its principal place of business in Midland, Texas. EER is also referred to in various communications as "Midland."

## JURISDICTION AND VENUE

4.      The amount in controversy, exclusive of interests and costs, exceeds $75,000.00. The jurisdiction of this Court is based upon diversity of citizenship pursuant to 28 USC § 1332. Venue is proper in this judicial district by virtue of 28 USC § 1391.

## FACTUAL BACKGROUND

5.      Anderson and Endeavor entered into an agreement whereby Anderson agreed to provide personal services to assist Endeavor in connection with the potential sale of oil and gas lease acreage to Carrizo (Utica) LLC ("Carrizo"). In exchange, Endeavor agreed to pay Anderson $200.00 per acre for each acre closed by Carrizo.

6.      When the contract of sale between Endeavor and Carrizo approached closing, Endeavor's President, Ron Broadway, sent Anderson a written agreement memorializing the personal services agreement described in paragraph 5, *supra*. In the email that included the memorialized agreement, Broadway stated to Mr. Anderson: "Once you have reviewed and agreed to format I will print and execute."

7.      Anderson responded on June 17, 2012 with some minor revisions to the written agreement to "more closely reflect[]" the "understanding of our agreement."

8.      Instead of receiving the executed agreement, Mr. Anderson received an email from John Calce, co-founder and Chairman of Endeavor, in which Mr. Calce stated that the agreement could not be executed given "the time frame we are dealing with." However, Mr. Calce was careful to acknowledge that, regardless of the alleged inability to execute a more formal writing, an enforceable agreement existed that ensured payment to Anderson. In his email, Mr. Calce stated:  "... Endeavor Ohio has paid brokers millions of dollars in commissions for helping with transactions in Ohio with no

2

agreement other than a handshake.  If you can help Carrizo issue Endeavor Ohio a contract to purchase the ~7000 acres we discussed on Friday (and if they can close within 30 days on terms acceptable to Endeavor Ohio) we can assure you that you will be paid $200 per acre of those ~7000 acres that are actually closed by Carrizo."

9.    Following the June 17, 2012 email from the Chairman of Endeavor, Mr. Anderson sought confirmation from Ron Broadway, President of Endeavor, that the parties' agreement would be honored by Endeavor. In response, Mr. Broadway assured Mr. Anderson that "You will not get screwed ..." and was told "... I made everyone agree to pay you $200 per acre if Carrizo could perform ...."

10.    Neither Broadway nor Calce indicated in any way that they were without authority to enter into the services agreement with Anderson.  At no time was Anderson provided with information from anyone that Mr. Broadway or Mr. Calce lacked authority to enter into the agreement.  Quite the contrary, all facts, statements and communications – including *inter alia*, Cruce's position as co-founder and Chairman of Endeavor – established Cruce's actual, implied and apparent authority.  This allegation is material in light of belated allegations by the General Counsel of EER that Calce lacked authority. (*See* ¶ 14, *infra*).

11.    Anderson performed all of its duties and obligations under the agreement. As a result of Anderson's services, Carrizo has agreed to purchase a substantial number of oil and gas lease interests from Endeavor.  Anderson has been informed that the first part of the sale of the oil and gas lease interests from Endeavor to Carrizo is scheduled to close on August 1, 2012.

12.    At approximately 3:58 pm CDT on July 30, 2012, Anderson received an email from Mike Short, General Counsel, Vice President, Land, of EER (a/k/a Midland) inquiring about Anderson's commission for the sale of the oil and gas lease interests from Endeavor to Carrizo.  Mr. Short does not claim to be general counsel for Endeavor.  Instead, he is the general counsel for EER.  Endeavor is a wholly-owned subsidiary of EER.

13.    That email from Mr. Short stated in relevant part:

"I have been provided nothing that indicates that there is any authorized or unauthorized agreement that establishes your right to receive a commission of any kind.

\* \* \*

You are advised that if you interfere with or cause the delay of the scheduled Carrizo closing in any manner, Endeavor Ohio LLC will take all immediate steps necessary and required to protect its interest, which unfortunately will necessitate the immediate filing of suit for, among other causes of action, injunctive relief, tortuous [*sic*] interference, declaratory relief and damages."

Not only were Mr. Short's accusations and threats contrary to the undisputed facts regarding the agreement to pay Anderson, but they were also diametrically opposed to the multiple written and oral assurances received by Anderson from officers at Endeavor, the entity with which Anderson contracted.

14.    A few hours later, Mr. Short sent another email to Anderson.  In the second email, Mr. Short falsely claimed that Ron Broadway had no authority to agree to a contract with Anderson.  Mr. Short stated, in between various threats of litigation, that:  "Endeavor Ohio intends to pursue its closing(s) with Carrizo.  It intends to [*sic*] for those closings to go smoothly, on time, and without interference from any outside third party."

15.     Short sent a third email to Anderson at approximately 11:29 am CDT on

July 31, 2012 apparently repudiating the agreement between Anderson and Endeavor and

asserting, in part:

> "1.     Carrizo's position is that they have no agreement or obligation to compensate you or your company on the Endeavor Ohio (EO) – Carrizo closing(s).
>
> 2.     Carrizo has informed EO that you and or your company have demanded a commission at the closing(s) of the EO-Carrizo transaction.
>
> * * *
>
> 5.     There is no written agreement between EO and you or your company to pay a commission to either of you at the closing of the EO-Carrizo transaction.
>
> 6.     The vehicles I see to resolve this matter are (a) obtain a General Release from you and your company for any commission alleged due at the closing(s), and proceed to close the EO-Carrizo transaction, or (b) attempt to close the transaction under one the other enumerated options, including escrow, which will establish the requisite damages, then file suit against you and your company to determine who, if anyone, owes you or your company a commission.
>
> 7.     There may be other options that we can discuss to avert unintended consequences.  Since tomorrow is the first scheduled closing, time is of the essence in reaching an agreement today.
>
> I am open to discuss with you the serious matters outlined above and any other matter you wish to discuss relative to Endeavor Ohio's properties in the state of Ohio.  **As previously indicated, I am also ready to discuss a reasonable payment in exchange for the General Release.  I look forward to visiting with you this afternoon at 4:30 and reaching a positive resolution to this matter.**"

(Emphasis added).  Despite repeated assertions that no agreement existed, Mr. Short also

demanded that Anderson provide "a General Release" for any commission.

16.     Subsequently, Mr. Anderson agreed to participate in a phone conference with Mr. Short to be held on the afternoon of July 31, 2012 to discuss, as was represented to Mr. Anderson, "reaching a positive resolution to this matter."

17.     However, the July 31 conversation was neither a mutual exchange of views regarding the dispute, nor did it consist of settlement negotiations.  Mr. Short dominated the conversation, sprayed an array of totally inapplicable "defenses" to payment, ultimately acknowledged that he had not even seen all the relevant documents, spewed a variety of threats against Mr. Anderson, and remarkably stated that if the closing with Carrizo did not proceed as scheduled Mr. Anderson would be "Target One." That threat was nothing less than a violation of federal law.

18.     Mr. Short unprofessionally breached the obligations which he owed to his company (as General Counsel) and Mr. Anderson, by using a conversation intended to agree or make a "reasonable payment" to Anderson as a guide to berate, demean, and use scare tactics to avoid Endeavor's legal obligation.

19.     Mr. Short's correspondence and related misconduct have established, beyond peradventure of doubt, that Endeavor does not intend to comply with its agreement and pay Anderson the specified and mutually agreed upon $200 per acre in accordance with the agreement.  Because the closing of the lease purchase is apparently scheduled to occur on August 1, 2012, Anderson has been, or is imminent danger of being, damaged.

20.     Prior to the close of the sale of oil and gas lease acreage interests to Carrizo, EER interfered with the contract between Anderson and Endeavor with respect

to the commission due Anderson for the sale of the oil and gas lease acreage from Endeavor to Carrizo.

21.     EER's actions represented the intentional actions of a non-party to interfere with the performance required by Endeavor, causing damage to Anderson.

22.     Endeavor, EER, or both, have received, or will receive, payment and will be enriched due to the actions of Anderson which were performed pursuant to the contract between Anderson and Endeavor.

## CLAIMS FOR RELIEF

### I.     DECLARATORY RELIEF

23.     Paragraphs 1 through 22 are incorporated by reference.

24.     This is a claim by Anderson for declaratory relief under and pursuant to 28 USC § 2201 for the purpose of determining questions of actual, justiciable controversy.

25.     Because of the foregoing, an actual controversy exists with respect to the payment obligations of Endeavor under the contract with Anderson.  Declaratory relief is necessary to adjudicate the respective rights and obligations of Anderson and Endeavor.

26.     Anderson seeks a declaration that it is owed a commission under the personal services contract relating to the sale of oil and gas lease interests from Endeavor to Carrizo in the amount of $200 per acre as set forth in that agreement.

### II.     BREACH OF CONTRACT

27.     Paragraphs 1 through 26 are incorporated by reference.

28.     This is a claim against Defendant Endeavor for breach of contract.

29.     In accordance with the terms of the contract reached between Anderson and Endeavor, Anderson is owed a commission of $200.00 per acre of the acres that were, or are about to be, purchased by Carrizo from Endeavor.

30.     Endeavor has breached the contract by repudiating its obligations under the Agreement.

31.     As a direct result of the breach of contract, Anderson has suffered actual damages in excess of $75,000.00, the actual amount of which shall be proven at trial.

### III.     UNJUST ENRICHMENT

32.     Paragraphs 1 through 31 are incorporated by reference.

33.     As set forth herein, Anderson conferred benefits upon Endeavor and/or EER by providing services in connection with the sale of oil and gas leases interests to Carrizo by Endeavor and/or EER.

34.     Endeavor and EER had knowledge of the benefits they received from Anderson in the form of services.

35.     Endeavor and EER received those benefits at the expense of Anderson.

36.     Under the circumstances, it would unjust and inequitable for Endeavor to retain these benefits without repayment to Anderson.  They should be disgorged by Order of this Court and paid to plaintiff.

### IV.     TORTIOUS INTERFERENCE WITH CONTRACT

37.     Paragraphs 1 through 36 are incorporated by reference.

38.     This is a claim against EER for tortious interference with contract.

39.     By reason of the conduct described above, EER has intentionally, maliciously and wrongfully interfered with Anderson's contractual rights in regards to its

8

contract with Endeavor.   Such interference was neither justified nor excusable and constitutes a wanton and reckless disregard for the contractual rights of Anderson with Endeavor.

40.    As a direct result of EER's conduct, Plaintiff has suffered actual damages in excess of $75,000.00, the actual amount to be proven at trial.

## V.    ENTITLEMENT TO PUNITIVE AND EXEMPLARY DAMAGES

41.    Paragraphs 1 through 40 are incorporated by reference.

42.    This is a claim against EER for punitive and exemplary damages arising from EER's liability with respect to Count IV.

43.    EER has acted intentionally and with malice toward Anderson.   The conduct of EER rises to the level of willful, wanton, heinous, grossly negligent, or reckless conduct for which it should be punished by an award to Anderson of exemplary and punitive damages in an amount sufficient, taking into consideration the assets and worth of EER, to render the consequences of its conduct an example to themselves.   In this regard, and under the specific facts of this case, EER is liable for both Category I and Category II punitive damages, as described in 23 *Okla. Stat.* § 9.1.   Under Category I, EER plainly acted in reckless disregard to the rights of others, thereby entitling Anderson to a potential jury award in an amount equal to the actual damages awarded by the jury.

44.    EER is further liable for Category II punitive damages because it acted intentionally and with malice toward others.   Reckless malice may be inferred from gross negligence that indicates conscious indifference to consequences of one's acts or reckless disregard for safety of others.   *Silkwood v. Kerr-McGee Corp.*, 769 F.2d 1451 (10th Cir. (Okla.) 1985).   Accordingly, and pursuant to 23 *Okla. Stat.* § 9.1 (C), EER should be

liable for punitive damages in amount not to exceed the greatest of: (a) Five Hundred Thousand Dollars ($500,000.00), (b) twice the amount of actual damages awarded, or (c) the increased financial benefit derived by the Defendant or insurer as a direct result of the conduct causing the injury to the Plaintiff and other persons or entities.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Anderson Energy Group (Ohio), LLC, prays for judgment against the Defendants, Endeavor Ohio, LLC, and Endeavor Energy Resources, LP, as follows:

A.      With respect to Claim I for declaratory judgment, a declaration by the Court adjudicating the respective rights and obligations of Anderson and Endeavor in accordance with the relief set forth in Claim I;

B.      With respect to Claim II for breach of contract, actual damages against Endeavor in an amount to be proved at trial, but which exceed $75,000.00;

C.      With respect to Claim III for unjust enrichment, payment by Endeavor and/or EER in an amount in excess of the valuable services provided by Anderson in connection with the sale of oil and gas lease interests from Endeavor to Carrizo;

D.      With respect to Claim IV for tortious interference against EER, (i) actual damages in an amount to be proved at trial, but which exceed $75,000.00 and (ii) exemplary and punitive damages as claimed in Count V;

E.      An award of all costs incurred by plaintiff in bringing and prosecuting this action, including reasonable attorneys' fees;

F.      Pre-judgment interest on the amounts owed plaintiff by defendant EER; and

G.    Such other relief to which plaintiff is entitled at law or in equity.

Respectfully submitted,

**Joel L. Wohlgemuth**, OBA #9811
**Jo Lynn Jeter**, OBA #20252
**Jess W. Arbuckle**, OBA #11208
**NORMAN WOHLGEMUTH CHANDLER &**
**DOWDELL**
401 South Boston, Suite 2900
Tulsa OK 74103
(918) 583-7571
(918) 584-7846 (facsimile)
Emails:      jlw@nwcdlaw.com
             jlj@nwcdlaw.com
             jwa@nwcdlaw.com

**ATTORNEYS FOR PLAINTIFF,**
**ANDERSON ENERGY GROUP (OHIO),**
**LLC**